CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
MAY 2 4 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| PATRICIA JOHNSON,<br><br>*Plaintiff,*<br><br>v.<br><br>JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant.* | CIVIL ACTION NO. 3:05-CV-00030<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Plaintiff Patricia Johnson's challenge to a final decision of the Commissioner denying her claim for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 *et seq.*

By standing order of the Court, this case was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. Johnson and the Commissioner filed motions for summary judgment on January 5, 2006, and January 24, 2006, respectively. The Magistrate filed his Report and Recommendation ("Report") on March 21, 2006, recommending that this Court enter an order granting the Commissioner's motion for summary judgment and dismissing the case.

On March 31, 2006, Johnson filed objections to the Report, which obligated the Court to undertake a *de novo* review with respect to those portions of the report to which objections were made. 28 U.S.C.A. § 636(b)(1).

# I. BACKGROUND

On December 15, 2003, Johnson filed an application for disability benefits and supplemental security income, alleging a disability onset date of September 1, 2003. (R. 62-65). After her claim was denied initially and on reconsideration, (R. 30, 41), Johnson requested a hearing, which was held on February 8, 2005, before Administrative Law Judge Charles Boyer. (R. 194).

Johnson cites the combination of obesity and bilateral degenerative joint disease ("DJD") of the knees as the cause of her disability.[1] (P. MSJ p.2; R. 189). She alleges that pain focused in her right knee prevents her from standing, walking, or sitting comfortably for long periods, and that she has trouble standing up. (R. 86, 101, 108, 116, 122, 139, 159, 160, 189, 199-200, 204). On December 8, 2004, she reported to her treating physician, Dr. Kelly McDonald, M.D., that she has trouble sitting or standing more than an hour or two at a time. (R. 189). She testified at the February 8, 2005 hearing that she must lay down throughout the day and prop her leg up about twice a day to relieve the pain. (R. 204).

On April 12, 2005, the ALJ issued an opinion denying benefits. Conducting the 5-step sequential evaluation required under 20 C.F.R. §§ 404.1520, 416.920, the ALJ found: (1) Johnson has not performed substantial gainful work since before the alleged onset date of September 1, 2003[2]; (2) her combination of moderate bilateral DJD of the knees and obesity is

---

[1] Johnson also alleged disability due to bilateral wrist pain and numbness, (Brief in Supp. of Compl. p.2), but has not disputed the ALJ's finding that the record contains no objective evidence of a condition reasonably likely to produce the pain alleged. (R. 20; Brief in Supp. of Compl.; P. MSJ; Obj. to R&R).

[2] Johnson's work history includes employment in a number of factories performing a variety of tasks from approximately 1989 through September 2001. (R. 198). She has not been employed since she was laid off in September 2001, when the factory in which she was working

"severe" under 20 C.F.R. §§ 404.1521, 416.921; (3) her impairment does not meet or equal an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) she has no manipulative limitations using her upper extremities, and even with moderate bilateral DJD and accompanying knee pain and stiffness, she has the residual functional capacity ("RFC") to perform prolonged sitting six hours per day; stand or walk two hours per day; lift weights up to 10 pounds frequently; and occasionally perform tasks involving manipulative limitations using upper extremities, and therefore she can still perform her last relevant work as a CD packer in a factory. (R. 21, 25-26). In concluding that Johnson has the RFC to perform her last relevant job, the ALJ credited the medical opinions of two non-examining physicians and decided not to credit Johnson's statements or Dr. McDonald's assessment that Johnson is not capable of sitting more than 3-4 hours cumulatively in an 8-hour workday. (R. 22-24).

The ALJ's decision denying benefits became the final decision of the Commissioner when the Appeals Council denied review on May 27, 2005. (R. 5); 20 C.F.R. § 404.981.

On June 27, 2005, Johnson timely filed a complaint in this Court seeking review under 42 U.S.C. §405(g).[3] In her Motion for Summary Judgment, she argues that (1) substantial evidence does not support the ALJ's determination that Dr. McDonald's opinion is inconsistent with the other evidence of record, and therefore the ALJ erroneously failed to accord this opinion controlling weight, and (2) the reasons given for discrediting Johnson's statements as to the nature and severity of her pain and physical limitations are irrational and unsupported, and

_____

closed. (R. 199).

[3] Prior to the Commissioner's final decision on May 27, 2005, Johnson had filed a subsequent application for benefits, which was approved in April 2005. (Brief in Supp. of Compl. p.5). Thus, she presently claims that she was deprived of nineteen months of benefits from September 1, 2003—the alleged onset date of her disability—through April 2005. *Id.*

demonstrate a failure to correctly apply the credibility assessment factors set forth in Social Security Ruling 96-7p.[4] (P. MSJ). She requests entry of an order reversing the Commissioner's decision and directing an award of benefits, or, in the alternative, that a new hearing be conducted to fully and completely adjudicate this case.

Magistrate Judge Crigler found that substantial evidence supports the ALJ's finding that Johnson's statements are inconsistent and therefore not entirely credible. (R&R p.4). Also finding that Dr. McDonald's opinion "was not well-supported, and was inconsistent with the other evidence, including the plaintiff's self-reported activities," the Magistrate concluded that "the Law Judge was not required to give controlling weight to the opinion." (*Id.* p.5). The Report recommends that the Court enter summary judgment in favor of the Commissioner.

Within the 10-day period prescribed by 28 U.S.C. § 636(b)(1), Johnson filed objections stating that neither of Judge Crigler's conclusions is supported by the record. As such, this Court must make *de novo* determinations as to whether the ALJ's credibility findings with respect to Dr. McDonald and the Plaintiff are lawful, rational, and supported by substantial evidence.

## II. STANDARD OF REVIEW

A claim that the Commissioner improperly applied legal standards is reviewed *de novo*. *Hines v. Bowen*, 872 F.2d 56, 58 (4th Cir. 1989); *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

An ALJ has a "duty of explanation" to "refer specifically to the evidence informing [his] conclusion[s]." *See Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Reviewing courts

---

[4] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

have a corresponding obligation "to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977).

The Commissioner's factual findings must be upheld if they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1990).

### III. DISCUSSION

A. In weighing Dr. McDonald's opinion, the ALJ neglected his duty of explanation, made findings unsupported by substantial evidence, and incorrectly applied governing regulations

The ALJ considered three medical opinions addressing Johnson's impairment and its effect on her RFC: (1) the December 8, 2004 "Physical Capacities Evaluation" of her treating physician, Dr. McDonald; (2) the March 5, 2004 Physical RFC Assessment of Dr. R.S. Radlin; and (3), the May 5, 2004 Physical RFC Assessment of Dr. William C. Amos. (R. 19, 130-137, 176-183, 187).

Dr. McDonald opined that Johnson can "stand/walk" for one hour and sit[5] only three to four hours cumulatively in an eight-hour workday, and can "not at all" stoop, squat, crawl, or climb.[6] (R. 187). Drs. Radlin and Amos assessed that Johnson can stand and/or walk at least

---

[5] Sitting, standing, and walking will be collectively referred to as "exertional limitations."

[6] These latter activities will be referred to as "postural limitations."

two hours and sit with normal breaks for a total of about six hours in an eight-hour workday. (R. 131, 177). Dr. Radlin found that Johnson can "never" climb or crawl, but can "occasionally" stoop, kneel, or crouch, while Dr. Amos described all of her postural limitations as occasional. (R. 132, 178).

Concerning Johnson's "other" limitations, Dr. Radlin reported, "Claimant's report of the intensity, location and frequency of discomfort is consistent with the medical evidence and her ADL's. Claimant credible." (R. 136). Dr. Radlin summarized Johnson's reports of her pain:

> 12-26-03 ADL/Pain Forms: Have pain off and on every half hour – lasts about 1/2 minute each time. Pain limits basic work activities. Using walking cane to help me . . . Daughter helps shop – "I walk around the store for some time and then my legs start hurting." Daughter helps with cooking because she cannot stand that long.

> 03-05-04 Claimant contacted. She is not working. She has had no surgery and still cannot afford an MRI. Knee is the same. Taking Vioxx and Tylenol – No Vicodin. "they [sic] told me to walk." I walk to the end of the road – about 1/2 mile. It takes me ten minutes ther [sic] and back." It is uncomfortable, but I do it anyway. It hurt [sic] to change from sit to stand and stand to sit. Once I'm down its [sic] better. I am not falling because of the knee. I am not falling. Not any big change in over a year. It's just been like this.

(R. 136; *see* R. 86). By contrast, Dr. Amos only found Johnson's allegation of severe knee pain to be "partially credible . . . objective medical and other evidence does not show [illegible] which would prevent all work as stated." (R. 181). Dr. McDonald reported Johnson's pain as ranging from moderate to severe. (R. 187).

A treating physician's opinion "on the issue(s) of the nature and severity" of a claimant's impairment will be assigned controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2). The ALJ recognized that the medical opinion of a treating physician "is entitled to appropriate consideration . . . if it is well-

6

supported and not internally inconsistent or inconsistent with other pertinent clinical evidence." However, the ALJ concluded that Dr. McDonald's opinion was entitled to "limited weight" after finding that it was "not supported by her own prescribed treatment and medication, x-ray findings, medical records, and the claimant's admitted activities of daily functioning." (R. 24).

The ALJ did not cite to a single page in the record to back up this finding of fact, and thus neglected his duty to "refer specifically to the evidence informing [his] conclusion[s]." *Hammond*, 765 F.2d at 426. Further, the Court's own review of the record reveals that the ALJ's finding is not supported by substantial evidence. On the contrary, Dr. McDonald's "own prescribed treatment and medication, x-ray findings, medical records" and "the claimant's admitted activities of daily functioning" support Dr. McDonald's opinion that Johnson has postural and exertional limitations and suffers from moderate to severe pain.

Dr. McDonald consistently credited Johnson's allegations of pain, prescribing her knee injections and prescription pain medication,[7] referring her to an orthopedic specialist in October 2003 and again discussing orthopedic referrals in December 2004 and April 2005,[8] ordering x-rays in October 2003 and December 2004, describing her knee pain as "persistent," and citing the recommendation of an orthopedist that she have an MRI.[9] (R. 156, 158, 159, 160, 161, 189).

As for supporting x-rays, Dr. Susan Powell of the University of Virginia Health System read an x-ray taken on November 11, 2003, to show "[m]oderate medial and mild lateral

---

[7] Dr. McDonald and other physicians gave Johnson free samples of prescription medication because she is uninsured and cannot afford to pay for it herself. (R. 157, 158).

[8] Johnson did not want to see an orthopedist because she was uninsured and unable to afford paying for orthopedic care out of pocket. (R. 156).

[9] Again, Johnson's lack of insurance prevented her from having an MRI done. (R. 158).

7

femorotibial and patellofemoral degenerative joint disease which has progressed in comparison to prior study."[10] (R. 140). Dr. A. Tanner Shilling of the University of Virginia Medical Center read an x-ray taken on December 8, 2004, to show "mild degenerative joint disease most prominent in the medial compartments of the right and left knee." (R. 184). The ALJ credited the finding of moderate DJD, (R. 25), and did not attempt to explain—nor could he, as he is not a physician[11]—why x-ray evidence of moderate DJD is inconsistent with moderate to severe knee pain or the exertional and postural limitations found by Dr. McDonald.[12]

As for other medical records, Dr. Rizk diagnosed "suspect meniscal tear with possible osteoarthritis" in January 2004; Dr. Goldberg diagnosed "persistent knee strain" in June 2002 and "osteoarthritis" in December 2004; Dr. Hart noted "knee DJD" in January 2005, and all three physicians gave Johnson prescription pain medications or steroid injections. (R. 157, 172, 185, 191). Again, the ALJ fails to explain how these records are inconsistent with Dr. McDonald's conclusions.

Finally, as discussed in the next section, the record does not support the ALJ's finding

---

[10] Comparison was made to a November 27, 2001 x-ray. (R. 140).

[11] *See Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (4th Cir. 1988) (noting that an ALJ "cannot substitute his expertise for that of a qualified physician"); *Walker v. Director, OWCP*, 927 F.2d 181, 184 n. 4 (4th Cir.1991) ("[A]n ALJ cannot substitute his or her opinion for that of a physician.").

[12] In certain records Dr. McDonald describes Johnson's DJD as "severe," which is inconsistent with the x-ray evidence. (R. 156, 189). However, it is not clear whether this apparent misapprehension of the severity of Johnson's underlying physical condition undermines Dr. McDonald's conclusions regarding the credibility of Johnson's pain allegations and associated physical limitations. On the December 8, 2004 Physical Capacities Evaluation form, Dr. McDonald checked off "x-ray" as "objective evidence" of Johnson's pain. Thus, his medical judgment appears to be that mild or moderate DJD can reasonably be expected to produce the exertional limitations and the "moderate" and "severe" pain Johnson alleges. (R. 187).

8

that Johnson's "admitted activities of daily functioning" are inconsistent with Dr. McDonald's opinion as to her limitations. In sum, the ALJ's one-sentence explanation of his refusal to credit Dr. McDonald's opinion is not supported by substantial evidence.

Nor did the ALJ correctly apply the regulations governing the weighing of medical opinions. An ALJ is "always" obligated to "give good reasons in . . . [his] decision for the weight [given the] treating source's opinion." 20 C.F.R. § 404.1527(d). Even when a treating physician's opinion is not given "controlling" weight because it is not well-supported or is inconsistent with the other substantial evidence of record, the ALJ is still obligated to look at the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, and other factors in determining the weight it deserves. 20 C.F.R. § 404.1527(d)(2)–(d)(6); *see also Morgan v. Barnhart*, 142 Fed. Appx. 716, 727 (4th Cir. 2005) (unpublished opinion). Nothing in the ALJ's decision shows that he weighed these factors. Rather, after finding Dr. McDonald's opinion inconsistent with other evidence, he assigned it "limited weight" without further analysis.[13] (R. 24).

Because the ALJ relied on findings unsupported by substantial evidence, neglected his duty of explanation, and incorrectly applied the medical opinion regulations in weighing Dr. McDonald's opinion, and these errors are not harmless, the Commissioner's decision must be reversed. On remand, the Commissioner must satisfy the duty of explanation and weigh the medical opinions in accordance with 20 C.F.R. §§ 404.1527, 416.927 and other applicable law.

---

[13] Similarly, without any indication that he weighed the § 404.1527(d) factors applicable to nonexamining physicians, or that he noticed the significant difference between Dr. Amos' and Dr. Radlin's opinions, *supra* p. 6, the ALJ lumped them together and accorded both "significant" weight. (R. 19, 21).

9

B. The reasons given for discrediting Johnson's testimony are irrational and unsupported by substantial evidence

The heart of Johnson's disability claim is that persistent knee pain precludes her from working because she can not sit or stand for prolonged periods or alternate positions without undue discomfort. *Supra* p.2. As the ALJ recognized, her claim is therefore governed by the Commissioner's regulations at 20 C.F.R. §§ 404.1529, 416.929, 404.1569a, and 416.969a, and Social Security Ruling 96-7p, which specify how the Commissioner evaluates symptoms, including pain, and their effect on a claimant's ability to work. The Fourth Circuit has explained:

> Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of medical impairment(s) which results from anatomical, physiological, or psychological abnormalities *which could reasonably be expected to produce the pain or other symptoms alleged.* 20 C.F.R. §§ 416.929(b) & 404.1529(b) . . . . [A]fter a claimant has met [this] threshold obligation . . . the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 594-95 (4th Cir. 1996)(emphasis in original).

The ALJ found that "[t]he medical evidence establishes the existence of impairments reasonably likely to produce some of the symptoms and limitations alleged by the claimant" and proceeded to "step two," evaluating evidence of the intensity and persistence of Johnson's pain and its effect on her ability to work. [R. 16, 22-23]. At step two, the decision-maker must "consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in § 404.1527." 20 C.F.R. § 404.1529(c)(1). The credibility of

10

the claimant's pain allegations are usually of critical importance at this stage, and SSR 96-7p offers detailed guidance concerning credibility assessments.

The ALJ gave fairly lengthy reasons for finding Johnson "not . . . fully credible as to the frequency and severity of her symptoms or the extent of her functional limitations." (R. 22). First, he stated, "While alleging chronic knee pain and stiffness she admitted that prescription anti-inflammatory and pain medication help relieve her symptoms." Nothing in the record is cited to support this statement, and it is not supported by substantial evidence. During office visits in June 2002, October and November 2003, and January 2004, Johnson's physicians recorded her view of the efficacy of pain medication: "In the past different anti-inflammatories have not worked, although she states that Vioxx helped minimally"; "She said she needs something beyond the Vioxx"; "Vioxx . . . did not seem to help"; "[s]he is continuing the Vioxx but still has a lot of pain in the back of the knee and on the side of the knee"; "[p]ain continues on Vioxx and Vicodon"; and "[s]he has been tried on Celebrex and Vioxx and nothing has seemed to improve it." (R. 157, 158, 159, 160, 161, 172).[14] Johnson also responded in an SSA

_____

[14] Later, in December 2004, Dr. Goldberg reported, "She has been on Vioxx in the past which was working pretty well. This was taken off the market and she was given some Celebrex which was working pretty well, although not as well as the Vioxx. She got nervous about taking the Celebrex and now is off that as well." (R. 191). Because Johnson saw Dr. Goldberg that day for wrist and hand numbness and pain, as well as knee pain, it is unclear whether the "working pretty well" assessment applies to one or both sources of pain. In any event, Vioxx was withdrawn from the market in September 2004 and could not offer Johnson relief after that time. *See* http://www.fda.gov/bbs/topics/news/2004/NEW01122.html. Like Vioxx, Celebrex is in the class of COX-2 Selective Non-Steroidal Anti-Inflammatory Drugs (NSAIDs). *See* http://www.fda.gov/cder/drug/infopage/cox2/. In an April 7, 2005 "Public Health Advisory," the FDA warned that there is "a potential for increased risk of cardiovascular (CV) events with these drugs [COX-2 selective NSAIDs]" and "well-described, serious, and potentially life-threatening gastrointestinal (GI) bleeding associated with their use." *See* http://www.fda.gov/cder/drug/advisory/COX2.htm. Johnson should not be penalized for refusing to take on this risk.

"Pain Questionnaire" that "[t]aking medicine like Vioxx helps a little, and Tylenol also help [sic] a little but not much. The pain is still there."[15] (R. 87). The notion that medication meaningfully relieved Johnson's symptoms is also inconsistent with the medical records showing that Johnson continuously sought medical attention for the pain despite taking prescription and over-the-counter pain medication. *See* (R. 156, 157, 158, 159, 160 (which includes hand-written notes showing another office visit on November 11, 2003), 161, 172, 185, 189).

Later, after citing a number of details that have no bearing on the credibility of Johnson's allegations —such as the fact that she stopped working in 2001 because she was laid off and not because of any impairment, which is wholly irrelevant given the alleged September 2003 onset date—the ALJ concluded:

> The claimant's admitted functional capabilities and daily activities and the conservative nature of her medical care serve to discount her credibility as to the frequency and severity of her symptoms and the extent of her functional limitations.

(R. 23). The ALJ's summary of "functional capabilities and daily activities" listed to support this conclusion contains elements of the irrelevant and the misleading. The ALJ stated without caveat that Johnson "fix[es] meals, tak[es] care of her personal needs, walk[s] about one-half mile or ten minutes daily, grocery shop[s] with her daughter's help, tak[es] care of her finances, read[s], sit[s] watching television about four hours a day, visit[s] with family and friends, attend[s] church, assist[s] her disabled son, and talk[s] on the phone."

---

[15] In finding the ALJ's credibility determination to be supported by substantial evidence, Judge Crigler cited a Social Security form in which "stops the pain" was entered in the "reason for medicine [Tylenol]" column. (R. 83). This electronic disability report form was completed not by Johnson, but rather by "A. Brooks." (R. 84). When Johnson was later able to hand-complete a nearly identical form herself, she wrote "pain" in the "reason for medicine" column. (R. 107). The first form, which was completed by another person, is a "mere scintilla" and not "substantial" evidence.

12

Most of these activities are perfectly consistent with an inability to walk or stand more than one hour or to sit more than one or two hours at a time (or three to four hours cumulatively within an eight-hour day). Also, the fact that Johnson reported watching four hours of television[16] does not raise a fair inference that she *sat* four hours continuously, when it is just as likely that she watched four hours cumulatively throughout the day, while laying down, or alternating positions. Next, the ALJ's summary of activities is incomplete and therefore misleading without noting Johnson's statements that (1) her doctors told her to walk, she finds walking "uncomfortable," and she cannot go further than a half mile "because of [sic] my leg hurts a lot," (R. 111, 174); (2) "I use my walking cane to help me walk," (R. 99); (3) she needs help fixing dinner because "I can't stand up on my legs too long" and "my legs give away [sic] and hurts [sic] a lot," (R. 97, 112); (4) she needs help doing chores because her "legs hurt a lot," (R.112); (5) "I cook and shop but I can only do these for a little while because of my knees [sic] and leg pains," (*Id.*, *see also* R. 97); and (6) at the grocery store "I walk around the store for sometime then my legs start hurting I need someone to walk and act [sic] them for me." (R. 97).

As to the "conservative" nature of Johnson's medical care, nothing in the record indicates that Johnson declined treatment available for her condition that she could afford. SSR 96-7p lists "[t]reatment . . . the individual uses or has used to relieve pain or other symptoms" as a factor to considering in evaluating the credibility of pain allegations. The Ruling elaborates:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment . . . [T]he individual may be unable to afford treatment and may not

---

[16] (R. 98-99; 113-14).

13

have access to free or low-cost medical services.

SSR 96-7p at *7-*8.

The ALJ did not consider Johnson's uninsured status during the time period in question as a possible explanation for the "conservative nature" of her care, in spite of numerous references in the record that she could not afford more aggressive treatment. *See, e.g.*, (R. 126 ("[I] [t]ake what ever samples the doctor has in the office. I have no money for doctor visit or medication."); R. 156 ("She continues to have bad problems with arthritis in her knees and requests some [free] samples of Vioxx. She does not want to see Orthopedics, because she does not have any insurance right now and does not think she can afford it."); R. 157 (noting that free samples of Vioxx were given because "patient does not have insurance," and "[o]nce she has medical insurance she will let me know and we will obtain an MRI on the knee"); R. 158 (noting that an orthopedic specialist wanted Johnson "to have an MRI if the pain did not improve, but she does not have insurance coverage right now and cannot afford it."); R. 174 ("She has had no surgery and still cannot afford an MRI."); R. 191; R. 205 (hearing testimony explaining that Johnson relies on free prescription medication samples because she can not afford to buy any)).

In the second paragraph of credibility-related findings, the ALJ concludes that Johnson's medically determinable impairments could reasonably be expected to produce just "some" of the alleged symptoms. (R. 23). In support of this finding, it is irrelevantly noted that Johnson "reported there has not been any significant change in her condition since she filed for benefits"—as if steady deterioration is a prerequisite of disability. Then follows the ALJ's assertion that a "November 2003 examination was significant for full range of motion of the right knee with flexion and extension with no effusion or leg give-way reported. There was only some

14

mild crepitus and positive patella tenderness." However, whether "full range of motion," "flexion," "extension with no effusion," and mild "crepitus" are in any way "significant" to the credibility of Johnson's pain allegations is quintessentially a judgment that should be reserved to one qualified to make it —a practicing physician. *See Peabody Coal Co.,* 859 F.2d at 489 (noting that an ALJ "cannot substitute his expertise for that of a qualified physician"). A few similar medical descriptions and observations follow, the significance of which, again, only a trained physician could illuminate.[17]

Finally, as another reason for discrediting Johnson, the ALJ stated that she "advised Dr. McDonald that she was comfortable when sitting, and that her other joints did not really bother her." Ms. Johnson never so advised Dr. McDonald. Rather, in his December 8, 2004 office visit report, Dr. McDonald recorded Johnson's statement that "she is not able to sit longer than an hour or two at a time and cannot stand longer than an hour or two," and noted in the "O"—i.e. observation —section of his report: "In general she is comfortable when sitting but has difficulty rising from a squat or from a sitting to a standing position." (R. 189). Given the clear context *of an office visit of limited duration,* no generalized inference concerning Johnson's endurance for sitting can be drawn from Dr. McDonald's "observation" during an office visit.

Because the reasons and reasoning given in discrediting Johnson's testimony are either

---

[17] The record does contain evidence that could assist a layman in drawing a connection between the medical records and the credibility of Johnson's allegations : (1) Dr. Radlin's opinion summarizing most of the medical evidence of record and concluding that Johnson's self-described limitations—which included a statement that "pain limits basic work activities"—are "credible" and "consistent with the medical evidence . . ." (R.136); (2) Dr. Amos's opinion finding, "Allegation of severe knee pain and hand numbness partially credible . . . objective medical and other evidence does not show [illegible] which would prevent all work as stated;" (R. 181); (3) Dr. McDonald's brief opinion (R. 187).

15

irrelevant, irrational, or unsupported by substantial evidence, on remand Johnson's credibility shall be re-examined in accordance with 20 C.F.R. §§ 404.1529, 416.929, 404.1569a, and 416.969a, Social Security Ruling 96-7p, and other applicable law.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to adopt the Magistrate's Report and Recommendation, and will deny the Commissioner's motion for summary judgment, grant the Plaintiff's motion for summary judgment in part, reverse the Commissioner's decision denying benefits, and remand for further review of the record consistent with this opinion.

An appropriate Order shall issue.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTERED: _____
U.S. District Judge

_____
Date    May 24, 2006

16